DON PALMER *vs.* BOARD OF REGISTRATION IN MEDICINE.

Suffolk. January 7, 1993. - May 4, 1993.

Present: LIACOS. C.J., WILKINS. NOLAN. & GREANEY. JJ.

*Board of Registration in Medicine. Administrative Law,* Proceedings before agency, Evidence, Findings, Judicial review. *Evidence,* Administrative proceeding, Relevancy and materiality, Credibility of witness. *Division of Administrative Law Appeals.*

In a proceeding before the Board of Registration in Medicine, there was substantial evidence to support the board's conclusions that a psychiatrist had exploited a female patient and had abrogated his responsibility as her psychiatrist when he "used her as a secretary, sexual partner, baby-sitter, and travel companion, all under the guise of therapy." [122-124]

In a proceeding before the Board of Registration in Medicine, there was no basis in the record to support a physician's claim that the administrative magistrate inferred that, simply because the physician had denied the charges against him, he had engaged in conduct warranting professional discipline; moreover, there was no prejudicial error in the argument of the prosecutor for the board regarding the physician's failure to acknowledge that he had acted improperly. [124-125]

The Board of Registration in Medicine acted within its discretion in revoking a physician's license to practice medicine and granting him leave to petition for reinstatement in two years based on its conclusion that the physician had exploited a female patient and had abrogated his responsibility as her psychiatrist when he "used her as a secretary, sexual partner, baby-sitter, and travel companion, all under the guise of therapy." [125]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on November 17, 1992.

The case was reported by *Abrams*, J.

*Morris M. Goldings* (*Amy J. Axelrod* with him) for the plaintiff.

*Thomas O. Bean*, Assistant Attorney General, for the defendant.

WILKINS, J. The plaintiff physician (Dr. Palmer) appeals from a decision and order of the Board of Registration in Medicine (board) which revoked his license to practice medicine with leave to petition for reinstatement after two years. The board adopted the recommended decision of an administrative magistrate who concluded that Dr. Palmer had exploited a female patient and had abrogated his responsibility as her psychiatrist when he "used her as a secretary, sexual partner, baby-sitter, and travel companion, all under the guise of therapy." The board stated, in justification for the sanction of suspension, that customarily it had dealt strictly with sexual offenses which involved both a serious departure from accepted medical practice and a complete abuse of patient trust and confidences.[1] A single justice of this court reported to the full bench Dr. Palmer's petition for review of the board's decision and order.

Dr. Palmer argues that (1) there was no substantial evidence to support the board's conclusions; (2) the administrative magistrate drew improper inferences against him; and (3) the circumstances do not warrant the sanction of suspension. We affirm the decision of the board.

1. There was substantial evidence to support the board's decision. Dr. Palmer's major claim is that the administrative magistrate should not have believed his former patient when

---

[1]The board also stated, as it often does where there are multiple violations, that the sanction of suspension was: "imposed for each violation listed in the 'Conclusions of Law,' and not a combination of any or all of them." We see no heading titled "Conclusions of Law" in either the board's final decision or in the administrative magistrate's recommended decision. We assume that the board was referring to the conclusions of the administrative magistrate. Although it is not important to this appeal, we doubt that the board's sanction could be imposed properly on Dr. Palmer for each violation standing alone. The disparity in the nature of the violations in this proceeding is too great to warrant the same sanction for each violation. That is, we doubt that circumstances would ever justify the imposition of the same sanction on a psychiatrist for having sexual intercourse with a patient and for having a patient type a letter. The board may wish to rethink the propriety of its use of this "boilerplate" language.

she testified that she and Dr. Palmer had engaged in sexual relations while she was his patient. There was a clear conflict between the former patient's testimony and Dr. Palmer's testimony as to whether they had engaged in sexual intercourse. It is true that there was no direct evidence to corroborate the former patient's testimony on this issue. It is also true that the patient did not make any complaint until about ten years after the events in question.

Considering the record as a whole, however, we conclude that the administrative magistrate was warranted in crediting the former patient's testimony. It is not controlling that the former patient had not consistently indicated the number of times that she and Dr. Palmer had had sexual relations. The former patient's inconsistencies were not so significant as to compel the administrative magistrate to disbelieve her testimony, particularly when compared to what the administrative magistrate warrantably characterized as Dr. Palmer's "inconsistencies, incredulities, equivocations, and frequent memory lapses during his own testimony." Although there was no direct corroboration of the former patient's testimony concerning sexual intercourse, the doctor himself admitted, in corroboration of the patient's testimony, that he had had the former patient type a letter for him, that he had come to her house and asked her to baby-sit for his daughter, and that the two had traveled to Newburyport together.

Finally, we see no basis for rejecting the board's findings because an expert who testified concerning the effect of Dr. Palmer's conduct on the former patient was also expected to testify for her in her civil action against Dr. Palmer. Although it would have been better practice to use a witness who was not otherwise involved, the fact of the expert's other role went only to the credibility and weight of his testimony. See *Embers of Salisbury, Inc.* v. *Alcoholic Beverages Control Comm'n*, 401 Mass. 526, 530 (1988). The expert's testimony was not critical because Dr. Palmer himself agreed that it was improper for a psychiatrist to engage in sexual conduct with a patient. The expert's testimony did not bear

on the question whether Dr. Palmer and his former patient had had sexual relations.

The administrative magistrate's determination on the credibility of the former patient and Dr. Palmer is controlling. Neither this court nor the board would be warranted in rejecting that determination. See *Morris* v. *Board of Registration in Medicine*, 405 Mass. 103, 109, cert. denied, 493 U.S. 977 (1989).

2. We reject Dr. Palmer's argument that the administrative magistrate improperly drew inferences against him. We simply do not see any basis in the record for Dr. Palmer's claim that the administrative magistrate inferred that, simply because he denied the charges, Dr. Palmer had engaged in conduct warranting professional discipline. The administrative magistrate disbelieved Dr. Palmer, and her disbelief of his testimony was an essential feature of her findings of fact. It would not, however, be correct to conclude that Dr. Palmer's denial of wrongdoing was a basis for the findings against him. Rather the incredibility of his testimony, and not the fact of his denial, was a factor, and an appropriate factor, resulting in the finding that he had engaged in sexual intercourse with his former patient.

Dr. Palmer makes a related argument. He claims that the prosecutor for the board improperly urged the board to conclude that Dr. Palmer lacked the character and ability to practice medicine because Dr. Palmer "is in an apparent complete state of denial in relationship to his own personal and professional responsibilities for his conduct." At this point the administrative magistrate's recommended decision was before the board for its consideration. The argument just quoted was preceded by the statement that the board had before it "an experienced physician who's committed gross psychiatric malpractice." The argument was relevant to the question of the level of discipline that the board should impose. Once the board accepted the administrative magistrate's conclusions of wrongdoing in deciding the physician's present fitness to practice medicine, the board could properly consider the failure of Dr. Palmer to acknowledge that he

had acted improperly. But, as we have said, the fact of denial itself would be an inappropriate reason for finding that a physician acted improperly. The prosecutor should have made a more focused argument. Here, however, we see no prejudicial error in the prosecutor's argument.[2]

3. The board acted within its discretion in revoking Dr. Palmer's license to practice medicine and granting him leave to apply for reinstatement in two years. Under the board's regulations, a physician whose license has been revoked may not apply for readmission for five years, unless the board orders otherwise. 243 Code Mass. Regs. 1.05 (3) (b) (1990). In selecting the sanction to impose on Dr. Palmer, the board acknowledged and reflected in the sanction selected "the time which has elapsed since the events at issue and the lack of patient complaints in the interim." This court has no basis for substituting its judgment for that of the board. See *Keigan* v. *Board of Registration in Medicine*, 399 Mass. 719, 723 (1987); *Levy* v. *Board of Registration & Discipline in Medicine*, 378 Mass. 519, 528-529 (1979).

4. The decision of the Board of Registration in Medicine is affirmed.

*So ordered.*

---

[2]The board could have avoided the problem by dividing the argument presented to it into two parts, first, whether to accept the administrative magistrate's recommended decision, and, second, assuming that the decision was accepted, what appropriate discipline to impose.