NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-884

HILARY A. AROKE

vs.

BOARD OF REGISTRATION IN MEDICINE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Hilary A. Aroke, filed an action in the nature of certiorari in the Superior Court after the Board of Registration in Medicine (board) rejected his petition for reinstatement of his medical license.  See G. L. c. 249, § 4.  After first remanding the matter to the board for further findings, a judge ruled on the parties' cross motions for judgment on the pleadings, entering judgment in favor of the board.  On appeal, we affirm.

Background.  Except as noted, the following facts are not disputed.  In 2009, the board initiated disciplinary proceedings against Aroke based on the reports of three patients (Patients A, B, and C) alleging that he had engaged in inappropriate sexual conduct with them.  Aroke has consistently denied that he engaged in any misconduct as to any of those patients.

In 2012, the matter was tried before an administrative magistrate. The magistrate concluded that the board had met its burden of proving that Aroke had committed sexual misconduct as reported by Patients B and C,[1] and recommended that the board impose some form of discipline. The board adopted the magistrate's recommendations as its findings and, in 2014, revoked Aroke's medical license.

In 2020, Aroke petitioned for reinstatement of his license. In doing so, he acknowledged the board's conclusion that he had committed the misconduct described by Patients B and C, but maintained his position that the misconduct did not happen. In support of his petition, Aroke highlighted the fact that despite having continued to practice in the five years between the time of the allegations and the suspension of his license, no other complaints were made against him. He also included an account of his ongoing scholarship since the suspension of his license and incorporated a series of highly complimentary character references from peers and mentors whose experience with him spanned his entire career, from his days as a student in his native Cameroon to the filing of his reinstatement petition.

---

[1] The administrative magistrate concluded that the evidence did not support the allegations made by Patient A.

2

On February 25, 2021, after a hearing, the board denied Aroke's petition in a written order comprising a single paragraph.[2]

As we have noted, Aroke sought judicial review of the board's decision in the Superior Court. Shortly thereafter, Aroke moved for judgment on the pleadings and the board cross-moved for the same relief. After a hearing, the judge remanded the matter to the board and ordered it to provide a supplemental decision "that sets forth some findings, reasons, and/or a rationale for the decision." The board subsequently issued a "supplemental order" stating that its denial of Aroke's petition for reinstatement of his license turned on the "particular egregiousness" of Aroke's sexually exploiting "vulnerable patients"; his "[l]ack of remorse" for that misconduct; the fact that rather than "tak[ing] responsibility for his actions," Aroke portrayed himself to the board as "a victim who was

---

[2] The order, in its entirety, read:

> "At its meeting on February 25, 2021, the Board of Registration in Medicine ('Board') heard from Hilary Aroke, M.D., ('Respondent') and considered the Respondent's Petition for Reinstatement and Complaint Counsel's September 16, 2020 letter. The Board concluded that the Respondent did not demonstrate that reinstatement of his license would be in the public interest, as required by 243 CMR 1.05(4). Therefore, the Board DENIES the Respondent's petition. Pursuant to 243 CMR 1.05(4), the Respondent may not submit a new Petition for Reinstatement to the Board for two years from the date of this Order."

3

wrongly accused of something terrible"; Aroke's lack of concern for how Patients B and C had fared in the wake of his misconduct; and what the board characterized as his strategy of "running the clock" by emphasizing "the mere passage of time without recurrence [of any misconduct]." On consideration of the board's supplemental decision, the judge determined that the board was entitled to judgment on the pleadings in its favor, where the board's conclusion that reinstatement of Aroke's license would not advance the public interest rested on its consideration of both "the nature of his past sexual misconduct, and his lack of remorse and insight into the misconduct" (emphasis added). This appeal followed.

Discussion. We review the judge's ruling de novo. See Mederi, Inc. v. Salem, 488 Mass. 60, 67 (2021). As we have noted, Aroke challenged the board's decision by an action in the nature of certiorari. See G. L. c. 249, § 4. "[T]he proper standard of review under the certiorari statute is flexible and case specific, but . . . as with review under G. L. c. 30A, § 14, the disposition must ultimately turn on whether the agency's decision was arbitrary and capricious, unsupported by substantial evidence, or otherwise an error of law" (citation omitted). Langan v. Board of Registration in Med., 477 Mass. 1023, 1025 (2017). See 243 Code Mass. Regs. § 1.05(4) (2012). We will reverse the board's decision only if the decision "lacks

4

any rational explanation that reasonable persons might support," or displays a "clear error of judgment in weighing relevant factors such that [it] falls outside [the] range of reasonable alternatives" (citation omitted). Frawley v. Police Comm'r of Cambridge, 473 Mass. 716, 729 (2016).

The board may reinstate a medical license if, in its discretion, it "determines that doing so would advance the public interest."[3] 243 Code Mass. Regs. § 1.05(4) (2012). Aroke analogizes to legal precedent stemming from bar discipline matters, and specifically to Matter of Hiss, 368 Mass. 447 (1975) (Hiss), to argue that the board abused its discretion by conditioning his eligibility for reinstatement of his medical license to his admission of guilt and "repentance" for the misconduct against Patients B and C. Assuming without deciding that Hiss, which considered an attorney's challenge to the Board of Bar Overseers' denial of his petition for reinstatement to the bar, applies to the board's disciplinary proceedings for a physician, Aroke's argument fails. As the judge aptly noted, nothing in Hiss precluded the board from considering Aroke's lack of repentance for the misconduct found by the magistrate and accepted as fact by the board. In Hiss, the Supreme

---

[3] In light of this clear regulatory statement, we are not persuaded by Aroke's argument that the question whether to reinstate his license was committed to the unfettered discretion of the board.

5

Judicial Court ruled that a disbarred attorney's petition for reinstatement of his license to practice law could not be rejected "solely" because of his failure to admit to the misconduct on which his disbarment was based. See id. at 459. In doing so, however, the Court expressly provided that "[r]epentance or lack of repentance is evidence, like any other, to be considered in the evaluation of a petitioner's character and of the likely repercussions of his requested reinstatement." Id. Accord Palmer v. Board of Registration in Med., 415 Mass. 121, 124-125 (1993) ("Once the board accepted the administrative magistrate's conclusions of wrongdoing in deciding the physician's present fitness to practice medicine, the board could properly consider the failure of [the physician] to acknowledge that he had acted improperly").

Although the standard for reinstatement to the bar turns on the petitioning attorney's "present good moral character," Hiss, 368 Mass. at 455 -- a question not before the board in this case[4] -- we see no reasoned distinction between the Board of Bar

---

[4] As we have noted, the board's regulations provide for reinstatement if, in its discretion, the board determines that "[reinstating the respondent] would advance the public interest." 243 Code Mass. Regs. § 1.05(4) (2012). Because the "present good moral character" requirement, Hiss, 368 Mass. at 455, was not a mandated part of the board's review here, we do not agree with Aroke's argument that either the board or the judge was required to apply the factors articulated in Matter of Cappiello, 416 Mass. 340, 343 (1993), for assessing a petitioner's moral fitness for reinstatement to the bar.

Overseers' ability to consider a respondent's failure to accept responsibility for misconduct in assessing an attorney's suitability for reinstatement of a professional license and the board's ability in the present context to consider such evidence in assessing whether to reinstate Aroke's medical license. Where the board's basis for denying Aroke's petition for reinstatement included not only Aroke's failure to acknowledge responsibility for the misconduct but also the "egregious" nature of the misconduct itself, the board's decision was not solely or improperly based on Aroke's refusal to admit to the misconduct.[5]  For that reason, we conclude that the board's supplemental order after remand was minimally adequate to show that its decision was not arbitrary or capricious.[6]  See Frawley,

---

[5] In its brief, the board suggests that there were three other considerations supporting its decision.  In our view, those additional reasons -- Aroke's reliance on the "passage of time without recurrence," his provision of "scant other bases for finding reinstatement advances the public interest," and his "manifest lack of 'insight as to why his touching of patients without a legitimate medical reason is a serious wrong'" -- are all conditioned on Aroke's admission that he committed the misconduct found by the magistrate and adopted by the board.

[6] We note that our confidence in the board's review would have been enhanced by a clearer indication in its orders that it had given fair consideration to the evidence mitigating in Aroke's favor.  Cf. Fisch v. Board of Registration in Med., 437 Mass. 128, 140 (2002) (rejecting argument that board failed to consider mitigating evidence where, despite lack of specific reference to that evidence, "the sanction imposed by the board clearly reflected the consideration of mitigating factors and was not unduly harsh").  Neither the order nor the supplemental order explicitly addressed evidence that Aroke (1) had spent the time since the revocation of his license "learning to understand

7

473 Mass. at 729.  Discerning no abuse of discretion on this basis, and in the absence of any other challenge to the board's decision, we are constrained to affirm the judgment.

Judgment affirmed.

By the Court (Blake,
  Massing & Hand, JJ.[7]),

*Joseph F. Stanton*

Clerk

Entered:  November 17, 2023.

---

why his perception of events may be vastly different from his patients" and to sympathize with his patients' feelings, (2) "[took] courses to help him better understand what went wrong and how he could evolve," or (3) that he could and did admit to mistakes when called upon to do so.  Where the board quoted from at least one of the supporting letters in its decision, however, we cannot say that Aroke demonstrated that the board failed in its duty to consider his evidence.

[7] The panelists are listed in order of seniority.